MISSOURI PACIFIC RAILROAD COMPANY, on its own Behalf and as Successor in Interest to Chicago and Eastern Illinois Railroad Company and to Texas and Pacific Railway Company and Their Subsidiary and Affiliated Companies, Plaintiff-Appellant, v. AMERICAN HOME ASSURANCE COMPANY *et al.*, Defendants-Appellees.

Second District    No. 2—96—0523

Opinion filed January 30, 1997.—Rehearing denied March 6, 1997.

Theodore R. Tetzlaff, John H. Mathias, Jr., Stephanie A. Scharf, Brent D. Stratton, David M. Kroeger, and Christine E. Kessler, all of Jenner & Block, of Chicago, and Phillip A. Luetkehans and James R. Schirott, both of Schirott & Luetkehans, P.C., of Itasca, for appellant.

Robert Marc Chemers, of Pretzel & Stouffer, Chartered, of Chicago, for

appellees American Home Assurance Company, Granite State Insurance Company, Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Company, and Unione Italiana Reinsurance Company of America.

Edward F. Ruberry, Michael S. Knippen, and Thomas M. Ryan, all of Bollinger, Ruberry & Garvey, of Chicago, and Stuart H. Newberger, Michael J. Zoeller, and Robert Goldberg, all of Crowell & Moring, of Washington, D.C., and Jeffrey N. German, Michael K. Willison, and Lisa Zucker, all of German, Gallagher & Murtagh, of Philadelphia, Pennsylvania, for appellees Central National Insurance Company of Omaha, Cigna Specialty Insurance Company, International Insurance Company, and United States Fire Insurance Company.

Terrence E. Kiwala and Ellen D. Holzman, both of Rooks, Pitts & Poust, of Chicago, for appellee First State Insurance Company.

Eric C. Young, of Dunham, Boman & Leskera, of East St. Louis, for appellee Employers Insurance of Wausau.

Mark A. Kinzie, of Stinson, Mag & Fizzell, of St. Louis, Missouri, and J. Patrick Sullivan, of Stinson, Mag & Fizzell, of Kansas City, Missouri, for appellee Federal Insurance Company.

Samuel A. Purves and Bonnie L. Braverman, both of McKenna, Storer, Rowe, White & Farrug, of Chicago, for appellee Allstate Insurance Company.

James T. Ferrini and Imelda Terrazino, both of Clausen Miller, P.C., of Chicago, for appellee Century Indemnity Company.

David P. Cutler, of Cutler & Hull, of Chicago, for appellees Transamerica Insurance Company.

JUSTICE COLWELL delivered the opinion of the court:

Plaintiff, Missouri Pacific Railroad Company (Missouri Pacific), appeals from the trial court's order granting partial summary judgment. The trial court determined as a matter of law that as of February 27, 1973, Missouri Pacific was aware of the substantial likelihood that its employees would file numerous claims for noise-induced hearing loss (NIHL). Consequently, the trial court held under the "known loss" doctrine that the defendant insurance companies (insurers) were not legally obligated to pay Missouri Pacific's losses arising from any NIHL claims occurring after February 27, 1973. We reverse and remand with directions.

The record shows that between 1973 and 1985 Missouri Pacific

purchased comprehensive general liability (CGL) policies from the insurers to cover its liabilities for third-party personal injury claims. By May 1972 Missouri Pacific had received its first NIHL claim. NIHL is hearing loss that is caused from the continuous and repeated exposure to workplace noise. Between 1972 and 1987, approximately 75 employees filed claims against Missouri Pacific for NIHL. After January 1, 1987, Missouri Pacific faced about 7,425 employee NIHL claims, which totals 99% of all NIHL claims filed against Missouri Pacific.

In April 1994, Missouri Pacific filed a declaratory judgment action, arguing that the defendants were legally obligated to insure the NIHL claims. On November 6, 1995, the insurers filed a motion for partial summary judgment. The insurers contended that the NIHL losses were "uninsurable known loss[es]" as of February 27, 1973.

The insurers argued that a letter dated February 27, 1973, from John Godfrey, Missouri Pacific's general attorney, to three other Missouri Pacific officers showed that on that date Missouri Pacific knew that there was a substantial probability that it would face a large number of hearing loss claims in the future. Specifically, the insurers relied on one sentence in Godfrey's letter, which states:

> "From what I have been able to read and learn from discussion with other claim people, the industrial hearing loss is definitely going to be one of the big claim areas in the future."

The insurers contended that this statement demonstrates that NIHL became an uninsurable known loss as of February 27, 1973, and that the insurers were not legally obligated to provide coverage for any losses due to NIHL occurring after this date.

The trial court granted the insurers' motion for partial summary judgment. The court stated that the Illinois Supreme Court explained the known loss doctrine in *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90 (1992). The trial court said that *Outboard* instructed lower courts to determine only whether the insured had knowledge of a known loss and that it was therefore irrelevant whether the insurers knew or had reason to know in 1973 that Missouri Pacific would face numerous NIHL claims in the future. Accordingly, the trial court determined, the only question was whether Missouri Pacific knew that NIHL would become a loss.

■ Next, the trial court stated that under *Outboard* a loss becomes an uninsurable known loss when the insured knew or had reason to know that a "probable loss or liability would occur." In applying this legal standard to the facts before it, the trial court found that the February 27, 1973, letter showed that Missouri Pacific "had reason to believe that there was a substantial likelihood of many induced hear-

ing loss claims." Consequently, the trial court granted the insurers' motion for partial summary judgment, finding that the insurers were not liable for the NIHL claims.

On appeal, Missouri Pacific contends that the trial court erred in determining that NIHL was an uninsurable known loss as of February 27, 1973. Further, Missouri Pacific argues that the trial court incorrectly found that the insurers' knowledge of NIHL at the time they issued the policies is irrelevant. Indeed, Missouri Pacific contends that the record shows that the insurers knew about the problem of NIHL, but chose not to exclude coverage for NIHL when they issued the CGL policies to Missouri Pacific.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Outboard*, 154 Ill. 2d at 102. Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt. *Outboard*, 154 Ill. 2d at 102. Therefore, where a reasonable person can draw divergent inferences from undisputed facts, summary judgment should be denied. *Outboard*, 154 Ill. 2d at 102. Finally, our review of the trial court's entry of summary judgment is *de novo*. *Monticello Insurance Co. v. Wil-Freds Construction, Inc.*, 277 Ill. App. 3d 697, 701 (1996).

■ First, Missouri Pacific argues that the known loss doctrine does not apply in this case because the doctrine can only be used in cases of property damage, not personal injury, and because the doctrine applies only to duty-to-defend insurance policies, not indemnity-only policies. We agree with Missouri Pacific that the majority of courts that have applied the known loss doctrine have applied it to property damage claims. Moreover, we agree with Missouri Pacific that in the cases it cites in its brief the insurance policies at issue were duty-to-defend policies, not indemnity-only policies. There is nothing in any of these opinions, or in *Outboard*, however, that mandates, or even suggests, that the known loss doctrine cannot be applied to personal injury claims or to indemnity-only policies. On the contrary, the *Outboard* court stated that the insurer in that case "had no duty to defend or indemnify" the insured against the underlying action. *Outboard*, 154 Ill. 2d at 106. Further, the *Outboard* court did not distinguish between personal injury and property damage claims. Accordingly, we find no legal basis for not applying the known loss doctrine to the case at bar.

In Illinois, the known loss doctrine may be invoked when the insured "knew or had reason to know *** that there was a substantial probability that loss or liability would ensue due to the [conduct] for which it is seeking coverage." *Outboard*, 154 Ill. 2d at 107. Indeed, it

is common knowledge that by its very nature insurance is based on contingent risks that may or may not occur. See *Outboard*, 154 Ill. 2d at 103. When, however, an insured knows or has reason to know at the time it purchases a CGL policy that there is a substantial probability that it will suffer or has already suffered a loss, the risk ceases to be contingent and becomes a probable or known loss. *Outboard*, 154 Ill. 2d at 103. Overall, the extent of an insured's knowledge must be determined on a case-by-case basis. *Outboard*, 154 Ill. 2d at 104.

In *Outboard*, the United States Environmental Protection Agency (EPA) and the State of Illinois brought separate actions against Outboard Marine Company (OMC) for the discharge of polychlorinated byphenyls (PCBs) into several bodies of water, including Lake Michigan. OMC tendered the defense of these actions to its insurers pursuant to CGL policies. The insurers, however, refused to defend OMC, alleging that the actions were not covered under the CGL policies because they were "known risks" to OMC at the time the policies commenced. In arguing that the actions were a known risk, the insurers pointed the court to an administrative order the EPA sent to OMC in February 1976. In pertinent part, the administrative order stated:

" 'The discharge of PCB's by [OMC] *** *presents an imminent and substantial danger* to the health and welfare of persons living adjacent to and utilizing the waters of Lake Michigan and threatens the livelihood of persons utilizing the waters of Lake Michigan for commercial and non-commercial fishing or other aquacultural and agricultural purposes.' " (Emphasis in original.) *Outboard*, 154 Ill. 2d at 104-05.

The *Outboard* court agreed with the trial court that this order demonstrated, as a matter of law, that OMC had knowledge that it would suffer a probable loss from PCB contamination. Accordingly, the *Outboard* court affirmed the trial court's grant of summary judgment, holding that the insurers had no duty to defend or indemnify OMC against the actions because the policies commenced after February 1976, at which time OMC had already received the order.

■ In this case, the trial court found that Godfrey's letter to three other officers in the company served the same purpose as the administrative order in *Outboard* because it gave Missouri Pacific knowledge of a substantial probability that NIHL claims would be made against it. On appeal, Missouri Pacific contends that while the letter may show that it had knowledge of a *risk* of NIHL claims at that time, knowledge of a risk is not equal to knowledge of a loss. The insurers, however, emphasize that the known loss doctrine does not require Missouri Pacific to have known the exact nature and

extent of the loss from NIHL, but only that Missouri Pacific knew of the existence of NIHL and that a loss was probable.

We agree with Missouri Pacific that Godfrey's letter does not show, as a matter of law, that Missouri Pacific was aware that there was a substantial probability that NIHL was a loss. Although the insurers choose to focus on Godfrey's writing that NIHL "is definitely going to be one of the big claim areas in the future," we find that a review of the entire letter demonstrates that Missouri Pacific was only aware that NIHL *would* become a problem if the trend of filing NIHL claims continued. Indeed, Godfrey begins his letter explaining that "[o]ver the years, we, in the claim area, have been able to detect trends in certain areas." Godfrey mentions whiplash and back injuries as examples of claim areas that he has researched in the past. Then, Godfrey states that "in the last few years, we see evidence that employees are beginning to magnify and to make the most of heart attacks and industrial hearing loss." After explaining that he believed hearing loss would "definitely be one of the big claim areas in the future," Godfrey discusses that after "touch[ing] base" with the safety department, operating department, and the chief medical officer, he "hope[s] [Missouri Pacific] can get something started" concerning a policy of protection regarding hearing guards.

We believe that these statements show that Godfrey's letter simply related *his* belief that there would be a trend of employees filing hearing loss claims in the future. Indeed, a more complete reading of the letter demonstrates that Godfrey, as Missouri Pacific's attorney, researched the market for current trends in the filing of claims, as he had done in the past. During this research, Godfrey became aware that other railroad employees often suffered from the loss of hearing and, as the letter states, in his opinion it appeared that hearing loss claims would definitely be one of the major claim areas for Missouri Pacific in the future. Consequently, after discussing the problem with the appropriate departments, Missouri Pacific should implement a "policy of protection" to prevent the filing of claims in that area.

We find that such speculation and discussion of a "trend" do not satisfy the *Outboard* test of having knowledge of a substantial probability that a loss will occur. Indeed, while we agree with the insurers that it is not necessary for Missouri Pacific to have known how many NIHL claims would be filed against it, or how much money it would lose from those claims, the known loss doctrine still requires Missouri Pacific to have known that there was a *substantial* probability that loss would ensue due to NIHL. See *Outboard*, 154 Ill. 2d at 107. In this case, we find that Godfrey's letter does not, as a mat-

ter of law, meet this standard. Rather, we find that the letter raises a factual question as to Missouri Pacific's knowledge.

First, we note that there are two distinctions between Godfrey's letter and the administrative order in *Outboard*. The *order* in *Outboard* was given to OMC by a third party—the United States government. In the case at bar, however, a letter, not an order, was given to Missouri Pacific. Further, unlike the order in *Outboard*, the letter was not from a third party; it was from a fellow Missouri Pacific employee.

Second, nothing in Godfrey's letter shows that Missouri Pacific had specific knowledge that it would be facing claims for hearing loss. On the other hand, the administrative order in *Outboard did* undeniably inform OMC that its discharge of PCBs had resulted in an "imminent and substantial danger" so that there was no doubt that OMC had knowledge that it would be facing claims for pollution. In other words, to use the same language as the *Outboard* court, Godfrey's letter does not "actually confirm[ ]" that hearing loss would occur in Missouri Pacific employees, unlike in *Outboard*, where the court found that the administrative order "actually confirm[ed]" that OMC's discharge of PCBs contaminated the water. See *Outboard*, 154 Ill. 2d at 105.

Consequently, instead of the administrative order, Godfrey's letter is similar to other documents in the *Outboard* case that the court determined did *not* demonstrate that OMC had knowledge of a substantial probability that claims would be made against it for PCB contamination. On appeal in *Outboard*, several insurers argued that various documents that predated the administrative order also showed that OMC knew that it would suffer a loss due to PCB contamination. In arguing that it did not know or have reason to know about the PCB contamination on an earlier date, OMC stated that, prior to the administrative order, "whenever it became aware of the *possibility* that it may have been discharging any pollutants ***, it took steps to divert and remedy any such problem so that a loss or liability would not arise." (Emphasis in original.) *Outboard*, 154 Ill. 2d at 106. Accordingly, OMC contended, even if it had knowledge of a risk of liability, it did not have knowledge of a probable loss.

The *Outboard* court agreed with OMC that the documents that predated the administrative order did not establish, as a matter of law, that OMC knew of a substantial probability that claims would be made against it for PCB contamination. Instead, the court stated that factual questions existed concerning OMC's knowledge at the time it purchased those policies which could not be determined summarily. *Outboard*, 154 Ill. 2d at 106.

Similarly, we believe that Godfrey's letter and other documents in the record before us raise factual questions regarding Missouri Pacific's knowledge of NIHL in 1973 that cannot be determined summarily. As with OMC in *Outboard*, the record in this case shows that when presented with the risk of NIHL claims, Missouri Pacific took steps to eliminate liability and any possible loss from NIHL.

For example, a March 1976 letter explains that at one location Missouri Pacific employees who had been wearing a certain type of ear muff had not made any complaints regarding hearing loss in six years. The same letter states that "Mr. German" had been working with ear specialists to determine the "best protection available." Accordingly, the record shows that Missouri Pacific was not treating hearing loss as an automatic consequence of its operations. Instead, like OMC in *Outboard*, Missouri Pacific attempted to negate any future claims or possible losses by providing protection to its employees. There would have been no reason for Missouri Pacific to implement this protection policy if it had *known* that its employees would file NIHL claims. Therefore, we find that a reasonable interpretation of Godfrey's letter shows that the letter informed Missouri Pacific that it may be at risk of liability for NIHL and that Missouri Pacific should attempt to negate any such claims. Consequently, summary judgment was not proper. See *Outboard*, 154 Ill. 2d at 102 (summary judgment should be denied where a reasonable person could draw divergent inferences from undisputed facts).

We note that several insurers erroneously argue that, if this court concludes that February 27, 1973, is not the date at which NIHL became an uninsurable known loss, this court must then determine whether any factual questions exist with respect to Missouri Pacific's knowledge at each time Missouri Pacific bought a policy after this date. It is the insurer's burden, not the court's, to show that a known loss exists. See *Outboard*, 154 Ill. 2d at 107. The trial court granted summary judgment for the insurers, holding that NIHL became a known loss on February 27, 1973. For the reasons explained in this opinion, we reverse that ruling, finding that factual questions exist regarding whether Missouri Pacific knew in 1973 that there was a substantial probability that NIHL was a loss. If the insurers wish to try to show that Missouri Pacific had the requisite knowledge on another date, they may do so in the trial court. In any event, the burden is not upon this court to determine whether and on what date NIHL became a known loss for the purpose of Missouri Pacific's insurance policies.

Finally, we note that this court cannot ignore the public policy ramifications of holding that an interoffice letter describing a trend

in insurance litigation constitutes knowledge of a known loss. In essence, we would be discouraging companies from researching safety issues. Indeed, a company would not have any incentive to spend money investigating claims filed by others in the industry in an effort to determine if it may face similar losses because whatever information it learned could translate into a known loss. Further, after conducting research a company would be discouraged from informing its departments about a potential liability because of the fear that any letter or memo discussing potential claims or potential liability could be used to show that a known loss existed.

Moreover, upon discovering that a potential liability exists, a company would not have any incentive to institute remedial measures because such action would not negate the requisite knowledge under the known loss doctrine. Indeed, in the instant case Missouri Pacific researched and implemented safety procedures in an effort to protect its employees from hearing loss as soon as it became aware of the possibility of a problem. Under the insurers' reasoning, however, regardless of what Missouri Pacific did, its actions do not negate its knowledge that NIHL was a known loss. Creating such a deterrent to protecting the public is why subsequent remedial measures are inadmissible in other tort claims: persons should not be deterred from remedying a potentially unsafe condition. Accordingly, while this court acknowledges that the known loss doctrine may be an appropriate issue for summary judgment, we find that in this case Godfrey's letter and the record as a whole raise too many factual questions regarding Missouri Pacific's knowledge of NIHL on February 27, 1973, for summary judgment to have been proper. See *Outboard*, 154 Ill. 2d at 104 (summary judgment is not proper if factual questions exist with respect to the insured's knowledge at the time it bought each policy).

■ The second issue on appeal is whether the trial court properly held that the insurers' knowledge of NIHL at the time they issued their policies to Missouri Pacific is irrelevant to determining whether an uninsurable known loss exists. Missouri Pacific argues that the insurers were equally aware of any potential liability from NIHL. Accordingly, Missouri Pacific contends, since the insurers did not specifically exclude NIHL from their policies, they intended their polices to cover NIHL claims. The insurers, however, contend that *Outboard* explicitly asserts that an insurer's knowledge is irrelevant under application of the known loss doctrine. Specifically, the insurers inform this court that the *Outboard* court stated:

> "[T]he relevant question is whether [the insured] knew or had reason to know that a probable loss or liability would occur due to

the [conduct] alleged in the underlying complaints." *Outboard*, 154 Ill. 2d at 107.

Contrary to the insurers' contention, this sentence from *Outboard* does not stand for the proposition that an insurer's knowledge of conduct alleged to be a known loss is irrelevant under the known loss doctrine. On the contrary, the *Outboard* court stated that an insurer does not have the duty to defend or indemnify a known loss *unless the parties intended the known loss to be covered.* See *Outboard*, 154 Ill. 2d at 104. Accordingly, the *Outboard* court acknowledges that an insurer's knowledge may be relevant in certain cases. As a result, the trial court erred in concluding that an insurer's knowledge concerning a known loss is automatically irrelevant. Instead, if, as Missouri Pacific alleges here, the parties intended the policies to cover the conduct alleged to be a known loss, the insurers' intent, and therefore their knowledge, regarding those policies is crucial.

A recent decision supports our finding that an insurer's knowledge is relevant under a known loss analysis. In *Atchison, Topeka & Santa Fe Ry. Co. v. Stonewall Insurance Co.*, No. 94—CV—1464 (Kan. Dist. Ct. September 18, 1995), the insurers claimed that they were not liable for losses due to NIHL under the known loss doctrine. The insurers contended that at the time their policies were issued the railway company was aware of numerous articles that indicated its workers were at risk for hearing loss. Accordingly, the insurers argued, the railway company was not required to provide coverage for this known loss. *Santa Fe*, slip op. at 3.

The *Santa Fe* court rejected the insurers' argument. The court stated that the widespread dispersion of the articles on NIHL showed that the insurers were *equally aware* of the risk of NIHL when they issued the policies. *Santa Fe*, slip op. at 3. The court then stated:

" 'It is well settled under the law of Illinois, as well as most other jurisdictions, that if an insurer does not intend to insure against a risk which is likely to be inherent in the business of the insured, it should specifically exclude such risk from the coverage of the policy.' " *Santa Fe*, slip op. at 4, quoting *Bremen State Bank v. Hartford Accident & Indemnity Co.*, 427 F.2d 425, 427 (7th Cir. 1970).

We find the *Santa Fe* decision particularly instructive to the case at bar and agree that, if the insurers in this case knew about NIHL and issued the CGL policies without an exclusion, they cannot claim that they are not liable for these losses.

The insurers correctly inform this court that the *Santa Fe* decision was based on Kansas, not Illinois, law and that its holding is not controlling upon this court. Indeed, the insurers repeatedly state in

their briefs that this court must follow the decision in *Outboard*, which states that an insurer's knowledge is irrelevant, instead of the *Santa Fe* decision. First, we reiterate that we find that *Outboard* does not stand for the proposition that an insurer's knowledge is never relevant under the known loss doctrine.

Second, we find that *Outboard* is not instructive on this particular issue because that case did not involve the level of knowledge an insurer had of conduct it alleged was a known loss. Indeed, OMC did not argue that the insurers knew that OMC had contaminated the water with PCBs but had granted OMC coverage anyway, which is what Missouri Pacific argues regarding the insurers and NIHL in the case at bar. Therefore, because the only issue in *Outboard* was the level of OMC's knowledge, of course the only relevant inquiry in that case was whether the insured "knew or had reason to know that a probable loss or liability would occur."

Contrary to the insurers' belief, our ruling does not contradict the "fundamental principle of fortuity" or denote that the known loss doctrine is no longer a condition precedent to coverage. Indeed, our decision does not mean that the only way an insurance company can avoid liability for conduct it alleges is a known loss is to exclude specifically that conduct from its policy. Certainly, if an insurer can show that it did not have knowledge of that conduct, but the insured did, it would not be liable for claims arising from that conduct—even if an exclusion did not exist. In situations such as in the case at bar, however, where the insured contends that the parties intended the policies to include the conduct alleged to be a known loss, and claims that the insurers knew about the potential liability from that conduct, an exclusion is necessary because it shows that, although the insurers were aware of the conduct, they did not intend their policies to cover losses arising from it.

For example, suppose an individual, while standing in his basement in three feet of water, calls an insurance company to obtain flood insurance. Later, the insurer argues that it is not liable for any loss because, under the known loss doctrine, the individual knew that he had already suffered or would suffer a loss from the water. In such a case, the insurer would not have to show that the insurance policy excluded known losses to avoid liability; it would have to show only that the *insured* knew that there was a substantial probability he would suffer a loss from the water. See *Outboard*, 154 Ill. 2d at 107. If, however, at the time the individual called to obtain flood insurance the insurer knew that the individual was standing in three feet of water but sold him a policy anyway, then the insurer could not claim that it was not liable for losses under the known loss doc-

trine because it *also knew* about the conduct that resulted in a loss. See *Santa Fe,* slip op. at 4; *Bremen State Bank,* 427 F.2d at 427.

The latter example is what Missouri Pacific contends occurred in this case: the insurers knew that Missouri Pacific's employees might experience hearing loss and file NIHL claims, but issued the policies, which did not contain an exclusion, anyway. Accordingly, the insurers' knowledge is relevant to this case. Indeed, to hold otherwise ignores a fundamental tenet of insurance law. See *Dash Messenger Service, Inc. v. Hartford Insurance Co.,* 221 Ill. App. 3d 1007, 1014 (1991) (if an insurer does not intend to insure a risk likely to be inherent in the insured's business, the insurer should expressly exclude that risk from coverage of the policy).

We note that Missouri Pacific points this court to documents in the record that it says indicate the insurers had knowledge of NIHL. For example, Missouri Pacific states that affidavits of certain employees demonstrate that Missouri Pacific informed the insurers of all claims, including NIHL, throughout the 1970s and 1980s. In response, First State Insurance Company argues in its brief that, while other insurance companies may have been informed of NIHL claims, Missouri Pacific never informed them of any claims. The trial court did not reach this issue because it never considered that the insurers and Missouri Pacific could have intended the policies to include NIHL. As a result, we decline to address the question of which insurers, if any, knew about NIHL when issuing their policies to Missouri Pacific. See *Jeanblanc v. Sweet,* 260 Ill. App. 3d 249, 254 (1994) (a reviewing court will not consider issues and arguments which were not considered by the trial court).

In conclusion, nothing in *Outboard* suggests that an insured's general speculation concerning potential future claims satisfies the requirements for the known loss doctrine. Indeed, it would be irresponsible for any company to purchase insurance for conduct without knowing the chances of that act occurring. See *Affiliated FM Insurance Co. v. Board of Education,* No. 90—C—6040, slip op. at 16-17 (N.D. Ill. October 6, 1992) (explaining that coverage is not excluded simply because the insured is aware of the *possibility* of loss because that is the reason he or she purchases insurance), *rev'd on other grounds,* No. 90—C—6040 (N.D. Ill. June 3, 1993), *aff'd,* 23 F.3d 1261 (7th Cir. 1994). Accordingly, we find that the trial court erred in holding that Godfrey's letter demonstrates as a matter of law that Missouri Pacific knew that there was a substantial probability that NIHL was a loss.

Further, we find that the trial court erred in concluding that an insurer's knowledge of the conduct it alleges is a known loss is irrele-

vant in determining whether an insurer is liable for losses arising from that conduct. Therefore, on remand we instruct the trial court to consider the insurer's knowledge of NIHL when determining whether Missouri Pacific and that insurer intended the policies to include coverage for NIHL.

Reversed and remanded with directions.

GEIGER, P.J., and BOWMAN, J., concur.