**Christopher TUCKER et al., Plaintiffs,**

v.

**OHTSU TIRE & RUBBER CO.,
LTD., et al., Defendants.**

**No. Civ.A. AMD 98–1099.**

United States District Court,
D. Maryland,
at Baltimore.

Feb. 18, 2000.

James P. Ulwick, Karl J. Nelson, and John A. Bourgeois, Kramon and Graham, PA, Baltimore, MD, for plaintiffs.

Joel A. Dewey, and Harold B. Dorsey, Piper, Marbury, Rudnick & Wolfe, Baltimore, MD, for defendants.

## MEMORANDUM AND ORDER

GRIMM, United States Magistrate Judge.

Plaintiffs' latest of many motions to compel that have required court resolution in this products liability case seeks to obtain

production of documents related to two lawsuits brought against defendant Ohtsu ("Ohtsu" or "defendant") in other jurisdictions. The first was filed in state court in Texas, *Hernandez v. Ohtsu Tire and Rubber Company*, Case No. 08–08–3500, District Court in the 79th Judicial District, Jim Wells County, Texas (the "Hernandez" case), and the second was filed in state court in New York, *Peralta v. Allweather Tire Sales & Service, Inc.*, Index No. 34057/98, Supreme Court of New York, Kings County, (the "Peralta" case). Defendant Ohtsu objects to production of the documents relating to these two cases for a variety of reasons: the plaintiffs' motion to compel was untimely; the defendant regards the plaintiffs' motion as harassment; it alleges production of these documents will violate a protective order; and it raises objections as to relevance, burdensomeness, and cost. As required by Local Rule 104.8, all of the papers relating to this motion have been filed collectively at Paper No. 54. No hearing is necessary. Local Rule 105.6. For the reasons stated below, plaintiffs' motion is granted, in part, and denied, in part.

■ All but one of the defendant's objections to the discovery plaintiffs seek are easily resolved. While plaintiffs candidly acknowledge that they failed to timely file this motion,[1] the defendant has identified no prejudice it would suffer if the motion is received. Plaintiffs only seek production of documents,[2] not more extensive discovery. The *Peralta* documents, according to the defendant, already have been produced, but not yet reviewed by the plaintiffs. The *Hernandez* documents are already in the possession of the defendant's Texas law firm, and are maintained in a segregated form, as apparently required by an order of the United States District Court for the Southern District of Texas.[3] Thus, granting the motion would not unfairly prejudice or burden the defendant.

Moreover, while a failure to comply with the time requirements of Local Rule 104.8 might ordinarily prove fatal to a motion to compel responsive answers, an absolute rule requiring this result without first determining whether the opposing party would suffer any real prejudice if the motion is granted would be too harsh a construction of the local rule. Fed.R.Civ.P. 1. Accordingly, the plaintiffs' motion will not be dismissed simply because it was untimely.

■ Defendant's relevance arguments also are without merit. As to the *Peralta* case, the defendant's production of those documents, which it asserts it has done—but the plaintiffs have yet to review them—moots its relevance argument. As to the *Hernandez* case, even though it relates to a light truck tire, not a passenger tire as is at issue here, the plaintiffs have established threshold relevance, as required by Fed.R.Civ.P. 26(b)(1) and Fed.R.Evid. 401. As plaintiffs note in their memoranda, the plaintiffs in the *Hernandez* case alleged the same defect as is alleged in this case, i.e., improper adhesion of the components of a steel belted radial tire. In addition, the plaintiffs already have made reference during this litigation to one deposition taken in the *Hernandez* case, to contradict statements made in the deposition of the defendant's Rule 30(b)(6) designee in this case. Accordingly, I am convinced that the

---

1. Local Rule 104.8 requires the filing of motions to compel responsive answers to interrogatories and document production requests within 30 days of receipt of the allegedly non-responsive answers. In this case, plaintiffs' motion was more than 40 days late.

2. To the extent that defendants may fear that, once plaintiffs review the documents produced as a result of this order, they may seek to take additional discovery in light of the information revealed in them, this concern is misplaced, as no extension of the discovery deadline would be granted absent extraordinary circumstances.

3. Plaintiffs refer to this order by the United States District Court for the Southern District of Texas regarding these documents on page 3, note 4 of their memorandum in support of their motion to compel. According to a letter from plaintiffs' counsel to this court, dated February 16, 2000, the order was made during a telephone conference on July 9, 2000 and the court did not memorialize it in writing. Neither party has provided me with any more information regarding this order, such as its specific content or the basis for the jurisdiction of the Southern District of Texas to enter such an order. Therefore, no information has been presented to me regarding the actions of the Southern District of Texas that would warrant changing the ruling in this order.

*Hernandez* documents, if otherwise discoverable, are relevant to this case and may lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1).

■ Additionally, defendant's assertions of harassment, burden, prejudice, and expense are generalized, non-specific objections, which are insufficient to prevent the requested discovery. The party claiming that a discovery request is unduly burdensome must allege specific facts that indicate the nature and extent of the burden, usually by affidavits or other reliable evidence. *See Coker v. Duke & Co.*, 177 F.R.D. 682, 686 (M.D.Ala.1998); *Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524, 528–29 (D.Nev. 1997). A conclusory assertion of burden and expense is not enough. *See Coker*, 177 F.R.D. at 686.

The one issue raised by the defendant in connection with the *Hernandez* case, however, which does require more extensive consideration, is its assertion that certain of the documents sought in connection with that case cannot be produced because to do so would violate a confidentiality order issued by the Texas court in that litigation. Because this issue is a recurring one, and there is little helpful authority to aid in its resolution, it deserves to be discussed in more detail. The starting point is the confidentiality order itself.

The order in question is titled "Agreed Confidentiality Order." (Pls.' Mem. at Ex. 3, Paper No. 54, hereinafter, the "Order".) The parties to the Order are the plaintiffs in the *Hernandez* litigation (the "Hernandezes") and defendant Ohtsu. The Order recites that the Hernandezes sought from Ohtsu documents which Ohtsu considered sensitive and confidential. The Order further states that because of this dispute, the Hernandezes and Ohtsu had agreed that the procedures identified in the Order would apply to all documents produced by Ohtsu that it designated as confidential. Thus, the scope of the Order is limited to protecting Ohtsu with respect to documents which it designated as confidential and produced during discovery. Like the protection afforded by the Order,

the obligations imposed by it are similarly one sided, as only the Hernandezes are enjoined from any use of the documents produced that do not fall within those permitted by the Order. At the conclusion of the litigation, the plaintiffs' attorney was obligated to return to Ohtsu's attorney all of the confidential documents produced, as well as any copies made. Order at ¶ 4.

The Order also contains a provision allowing the Hernandezes to challenge Ohtsu's designation of documents as confidential, Order at ¶ 5, and further recites that the parties had been unable to agree whether plaintiffs' counsel could share the documents produced pursuant to the Order with attorneys currently prosecuting similar claims against Ohtsu. Thus, at ¶ 6, the Order recites that the plaintiffs' attorney could not make disclosure of documents covered by the Order to other attorneys unless the court first ruled on this issue, following a hearing. The materials provided to me by the parties with this motion contain no rulings from the Texas court on this issue, so I must conclude from this that the court was never called upon to decide this issue during the pendency of the *Hernandez* case.

Finally, the Order states that it "shall be considered as an Order" of the Texas state court, and "shall survive and remain in full force and effect after termination" of the *Hernandez* litigation. Order at ¶ 8. The Order was signed by the judge presiding over the *Hernandez* litigation on August 21, 1998. In their memoranda, both the plaintiffs and Ohtsu agree that the *Hernandez* case has now settled, and is concluded.

Viewed as a whole, the Order is typical of those frequently issued in products liability and commercial cases.[4] It is more in the nature of an agreement between the parties as to how discovery that one party seeks, and the other resists because of confidentiality concerns, will be handled without court intervention. Such agreements, presented to the court as having been consented to by the parties, are routinely signed without any hearing on the merits of the assertion of confidentiality by the party from whom discovery is sought or the appropriateness of

---

4. *See generally* MANUAL FOR COMPLEX LITIGATION § 21.432 at p. 67–72 (3d ed.1995).

the restrictions on use of the documents covered by the order. As such, they do not reflect any conclusion by the court regarding the appropriateness of designating particular documents as confidential, pursuant to Fed. R.Civ.P. 26(c)(7). Further, as in this case, such agreements frequently are one sided, imposing all the obligations on the party seeking discovery, and affording all the protections to the party that initially resisted it.

The issue that presents itself, then, is what weight, if any, should this court give to the order issued by the Texas state court. On its face, the Texas Order continues in effect, even though the *Hernandez* case has settled. In addition, as the plaintiffs and Ohtsu agree, certain of the documents plaintiffs' seek in this litigation, which I have determined to be relevant to this case, fall within its scope. Resolution of this issue depends on principles of federalism, comity and courtesy, as well as an evaluation of the nature of the Order, and practical matters such as where the court should allocate the burden and expense of seeking modification of the Order.

█ There seems to be little doubt that a protective order issued by a court, either state or federal, which on its face survives the underlying litigation, continues to have full force and effect on the parties subject to it even after final resolution of the underlying case, and the issuing court retains jurisdiction and authority to modify or revoke it. *See Public Citizen v. Liggett Group,* 858 F.2d 775, 780–82 (1st Cir.1988) (holding that the issuing court necessarily has the power to enforce a protective order it issued at any point it is in effect, even after entry of a final judgment, and courts enjoy the inherent power to modify any discovery related orders post-judgment); *see also United Nuclear Corp. v. Cranford Ins. Co.,* 905 F.2d 1424, 1427 (10th Cir.1990) (noting that as long as a protective order remains in effect, the court that entered it retains jurisdiction to modify it, even if the underlying suit has been dismissed. Modification of the order, like its initial issuance, is a matter of discretion for the court); *Rogers v. Proctor & Gamble Co.,* 107 F.R.D. 351, 352 (E.D.Mo.1985) (concluding that every court has supervisory power over its own record and files, and the deci-

sion to lift a protective order is a discretionary function for the court that issued it); *Dushkin Publ'g Group, Inc. v. Kinko's Serv. Corp.,* 136 F.R.D. 334, 336 (D.D.C.1991) (noting that a party in a lawsuit in one jurisdiction which seeks discovery covered by a protective order issued by another court has standing to intervene in that litigation to seek a ruling, and the court that issued the protective order retains jurisdiction to decide such a motion). It has been observed, however, that the power of the issuing court to modify its protective order in a case which has been finally determined is limited to modifying or terminating it in such a way that it does not impose new and affirmative obligations on the parties, and a court should avoid issuing discovery orders that are applicable only to collateral litigation in another court. *See United Nuclear Corp.,* 905 F.2d at 1428.

Courts which have been called upon to decide discovery motions that involve requests to modify or terminate a protective order previously issued by another court, whether state or federal, have frequently felt constrained by principles of comity, courtesy, and, where a federal court is asked to take such action with regard to a previously issued state court protective order, federalism. *See Puerto Rico Aqueduct and Sewer Auth. v. Clow Corp.,* 111 F.R.D. 65, 67–68 (D.P.R. 1986) (concluding that the proper way for a third party to challenge a protective order is to move to intervene in the action in which it was issued, and principles of comity require a subsequent court to await a ruling by the court that issued the order); *see also Deford v. Schmid Prod. Co.,* 120 F.R.D. 648, 650, 655 (D.Md.1987) (noting in passing issues of comity and courtesy involved where federal court is asked to modify a discovery order issued earlier by a state court); *Dushkin Publ'g Group, Inc. v. Kinko's Serv. Corp.,* 136 F.R.D. 334, 335 (D.D.C.1991) (declining, as a matter of comity and respect for another federal court, to modify a protective order issued by the other court and instead required the party seeking the modification to first go to the issuing court).

These principles, while unquestionably important, are not absolute, and courts asked to

issue discovery orders in litigation pending before them also have not shied away from doing so, even when it would modify or circumvent a discovery order by another court, if under the circumstances, such a result was considered justified. For example, in *LeBlanc v. Broyhill*, 123 F.R.D. 527 (W.D.N.C. 1988), the court recognized the important principles of federalism called into play by a request that it permit discovery in a pending case which, if granted, would modify a protective order earlier issued by a state court. *Id.* at 530. Nevertheless, it did exactly that because it determined that the party seeking the discovery had not been able to intervene in the state action before it was voluntarily dismissed, and recognized that a "practical solution" was needed. *Id.* at 531. The need for a practical solution militated against requiring the party seeking the documents to go back to the state court to file a new action simply to seek a modification of a discovery order in a case that was closed. *Id.* Additionally, the court noted that the protective order in question, as in this case, had been negotiated by counsel, and once they had agreed on its terms, it had been presented to the court to sign. *Id.* The federal court therefore viewed the order as being more akin to a private "contract" between counsel than an order issued by the court, following a fair briefing of issues, and a deliberate consideration by the court. *Id.*

Similarly, in *Carter–Wallace Inc. v. Hartz Mountain Indus. Inc.,* 92 F.R.D. 67 (S.D.N.Y.1981), the plaintiff asked the court to order discovery against the defendant, which previously had been a defendant in a similar lawsuit in the Eastern District of Virginia. The court in Virginia had issued a protective order governing the use of discovery materials provided by the defendant. In the New York action, the plaintiff sought the same information that the defendant already had produced, subject to the protective order, in the Virginia case. The defendant resisted, asserting the Virginia protective order as a bar to producing the documents. The New York court rejected the defendant's position out of hand, stating:

> Significantly, [the plaintiff] seeks production not from the court whose order sealed the record nor from the party whose receipt of the information was contingent

upon its maintenance of strict security over its further dissemination. Rather, discovery is explicitly directed at [the defendant], the party that originally controlled the evidence and the one party not bound by an order which by its own terms prohibits disclosure only by 'the receiving party.' None of the cases or principles cited by [the defendant] support the absurd tenet that a party can avoid discovery in one case merely because it disclosed the same material to an adversary bound by a protective order in another case.

*Id.* at 69. Accordingly, the court ordered the production of the discovery, notwithstanding the protective order issued by the Virginia court.

As already noted, the Order issued by the Texas court is similarly one sided, imposing all the obligations against the plaintiffs in that case, and affording all the protections to Ohtsu. Like the plaintiff in *Carter–Wallace*, plaintiffs in this action seek discovery not from the lawyer who represented the Hernandezes in the Texas case, but from Ohtsu, which was the original source of the documents in the Texas litigation, and to whom the documents produced in that case were returned following the conclusion of that case.

■ Finally, it warrants noting that all of the cases cited above which discuss this issue were written before the 1993 changes to the Federal Rules of Civil Procedure. Specifically, changes made at that time to Rule 26(b)(2) were intended to remind courts of the need to consider the potential expense and burden of discovery on the litigants, as well as their resources. *See* Commentary to 1993 changes to Fed.R.Civ.P. 26(b)(2), 146 F.R.D. 401, 613 (1993). Consistent with this approach, it is appropriate for a court to consider the time and expense related to requiring a party in a pending case to initiate an action in another court for the sole purpose of requesting modification of a discovery order issued by that court.

■ From the cases discussed above, I believe that it is possible to distill rules of reason to use to determine whether or not it is appropriate to enter a discovery order in this case that would have the effect of modifying the Order issued by the Texas court.

First, this court should consider the nature of the protective order issued by the first court. In this case, as in the *LeBlanc* case, supra, the order was more in the nature of an agreement between counsel that, once completed and signed, was presented to the court for its approval. Thus, the Texas court's role was after the fact, as an instrument to implement what the parties already had agreed to. This is quite a different situation than that presented when a discovery dispute is raised before a court and, after a full hearing, it issues an order reflecting its deliberative process and decision. There is less need for deference and comity when the order involved is really an agreement by counsel approved, almost as a ministerial act, by the court, than an action directed by the court after a full consideration of the merits of a fully briefed dispute.[5]

■ Second, the court should consider the identity of the party from whom discovery is sought. In this regard, it should be noted that discovery is sought in this case not from the party against whom the obligations of the Texas Order apply, the Hernandezes, but instead from the source of those documents, Ohtsu. Thus, compelling the production of the documents sought directly from Ohtsu, as was noted by the Court in *Carter–Wallace*, supra, does not at all undermine the authority of the Order issued by the Texas court. Indeed, in this case, as in *Carter–Wallace*, there is something unsettling about the notion that Ohtsu might forever be insulated from producing discovery in this, or other actions, by virtue of having once produced it in a protected fashion in the *Hernandez* case. Accordingly, consideration of the second factor militates in favor of modifying the Order to permit the discovery sought in this case.

■ Third, the court should consider whether the case in which the original protective order was issued is still pending, and if not, the burden and expense to the plaintiffs if they are required to file a new action in the Texas court simply to seek modification of the Order issued there. In this regard, the *Hernandez* case has been settled, and there is no longer any action pending before the Texas court. If that court now is asked to modify its original order, particularly by the plaintiffs in this case, who are not parties to the Texas Order, that court will be in the position of having to rule on a matter of significance only to collateral litigation in this court. Asking the Texas court to second guess the impact of its ruling on collateral litigation is an unfair burden to it, and also imposes a substantial hardship on the plaintiffs forced to seek such relief. It is difficult to imagine why the Texas court should be asked to take time from more pressing tasks to consider, for the first time, the merits of a contested discovery dispute which it never considered in the case before it, and the outcome of which will be important only to the litigation in this court. Similarly, to ask the plaintiffs to bear the expense of filing a new action in the Texas state court seeking a modification of the Order it issued in the *Hernandez* case would impose far greater burden and expense than if this court decides the issue. Considering the factors identified by Rule 26(b)(2), I find the value of the discovery sought, as well as the expense to the plaintiffs if they had to file an action in the Texas court, to be such that this court should decide the issue. Fed.R.Civ.P. 26(b)(2). Thus the third factor also militates in favor of resolving this dispute in this court.

■ Finally, the court should consider whether it is possible to incorporate terms in its own order which will further the protections originally ordered by the Texas court. This is easily done by imposing on the plaintiffs in this action the same obligations and restrictions that were originally imposed on the Hernandezes. Accordingly, production of the documents in this case which fall within the scope of the Order originally issued by

---

**5.** In its initial objections to the plaintiffs' third request for production of documents, the defendant referred to the Texas state court enforcing this Confidentiality Order in response to the plaintiffs' subpoena attempts. (Pls.' Mem. at 4, Paper No. 54.) However, the defendant failed to elaborate on this contention in its objection to the plaintiffs' motion to compel, and the plaintiffs' counsel stated in a letter to this court, dated February 16, 2000, that they were unaware of any order by the Texas state court to enforce its order, or the factual basis for the defendant's contention. Since I can only rule based on the facts made known to me by the parties, there is nothing about the defendant's cryptic reference to unidentified orders by the Texas state court which requires me to alter this ruling.

the Texas court will be subject to its same restrictions. As to any documents sought by the plaintiffs in connection with the *Hernandez* case which do not fall within the purview of the Texas Order, their production shall be subject to the confidentiality order already in place in this case. After this case has concluded, if there are efforts to obtain the documents ordered produced by this order in connection with litigation pending in other courts, they are free to decide for themselves whether the discovery sought should be granted, and, if so, what protective measures should accompany it.

With respect to the *Peralta* case documents that the plaintiffs seek, their motion to compel is denied to the extent that these documents already have been made available to the plaintiffs, but not yet reviewed. However, as Rule 26(e)(2) makes clear beyond any doubt, defendant Ohtsu is obligated to supplement its production if it learns that its prior response is in some material respect incomplete or incorrect, or corrective action has not otherwise been made to the plaintiffs. Fed.R.Civ.P. 26(e)(2). Ohtsu may regard this obligation as burdensome, but the plain language of the rule requires nothing less.

The discovery ordered herein shall be produced within 21 days of this order. A separate order shall issue.