Thomas B. DONOVAN, individually and as Trustee of the Thomas B. Donovan Family Trust; Pamela Donovan, individually and as Trustee of the Thomas B. Donovan Family Trust; Thomas B. Donovan Family Trust; Secured Partners Corp.; and First Secured Capital Corp., Plaintiffs,

v.

Oskar P. LEWNOWSKI; Thomas J. Ryan III; Michael Asseff; Winchester Global Trust Company Limited; Olympia Capital International, Inc.; Olympia Capital Associates, L.P.; Highlands Financial Services, LLC; Structured Assets Services, LLC; and Factored Receivables Trust, Defendants.

No. 04–20837CIV.

United States District Court, S.D. Florida, Miami Division.

May 7, 2004.

Nikki Lewis Simon, Greenberg Traurig, Miami, FL, Charles Shelby Dale, Jr., Esq., Fort Lauderdale, FL, Jared Gelles, Esq., Rafferty, Hart, Stolzenberg, Gelles Tenenholtz, P.A., Miami, FL, Peter J. Tomao, Esq., Garden City, NY, for plaintiffs.

## ORDER GRANTING SPECIAL MASTER, STANLEY H. WAKSHLAG'S MOTION TO QUASH SUBPOENA DUCES TECUM

ALTONAGA, District Judge.

**THIS CAUSE** came before the Court on Special Master, Stanley H. Wakshlag's (here-

inafter the "Movant" or "Special Master") Motion to Quash Subpoena *Duces Tecum* [**D.E.** 1], filed on April 9, 2004. Having carefully considered the written submissions and oral argument of the Movant and the Respondents, it is

**ORDERED AND ADJUDGED** that the Motion [**D.E.** 1] is **GRANTED** as follows:

■ 1. The Subpoena *Duces Tecum* (the "Subpoena") issued on March 24, 2004 to the Movant from the United States District Court for the Southern District of Florida, in the action styled *Thomas B. Donovan, et al. v. Oskar P. Lenowski, et al.*, an action pending in the United States District Court for the Eastern District of New York, Case No. CV–03–2985 (the "New York Action"), is quashed pursuant to the Federal Rules of Civil Procedure. It is quashed pursuant to Fed.R.Civ.P. 45(c)(3)(A)(iv) because compliance would subject the Movant to the "undue burden" of violating the protective orders of the state court in the action styled *Structured Asset Servs., LLC v. RM Advisory Services, Inc.*, et al., Case No. 03–03729 CACE 12 (the "State Court Action"), pending in the Seventeenth Judicial Circuit in and for Broward County, Florida (the "State Court"). The Subpoena is also quashed pursuant to Fed.R.Civ.P. 45(c)(3)(B) because it "requires disclosure of a trade secret or other confidential research, development, or commercial information," and the Respondents that issued the Subpoena have not shown "a substantial need for the . . . material that cannot be otherwise met without undue hardship." Fed.R.Civ.P. 45(c)(3)(B). The Notes to the 1991 amendments to Rule 45 state, in pertinent part:

> Clause (c)(3)(B) identifies circumstances in which a subpoena should be quashed unless the party serving the subpoena shows a substantial need and the court can devise an appropriate accommodation to protect the interests of the witness.

\*  \*  \*  \*  \*  \*

Clause (c)(3)(B)(i) authorizes the court to quash, modify, or condition a subpoena to protect the person subject to or affected by the subpoena from unnecessary or unduly harmful disclosures of confidential information. It corresponds to Rule 26(c)(7) [of the Federal Rules of Civil Procedure].[1]

■ Principles of comity and respect for the effect of preexisting judicial orders also compel the granting of the relief sought by the Special Master. "Courts which have been called upon to decide discovery motions that involve requests to modify or terminate a protective order previously issued by another court, whether state or federal, have frequently felt constrained by principles of comity, courtesy, and where a federal court is asked to take such action with regard to a previously issued state court protective order, federalism." *Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 191 F.R.D. 495, 499–500 (D.Md.2000) (citing *Puerto Rico Aqueduct and Sewer Auth. v. Clow Corp.*, 111 F.R.D. 65, 67–68 (D.P.R.1986) (concluding that the proper way for a third party to challenge a protective order is to move to intervene in the action in which it was issued, and principles of comity require a subsequent court to await a ruling by the court that issued the order); *Deford v. Schmid Prod. Co.*, 120 F.R.D. 648, 650, 655 (D.Md.1987) (noting issues of comity and courtesy are involved where federal court is asked to modify a discovery order issued earlier by a state court); *Dushkin Pub'g Group, Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 335 (D.D.C. 1991) (declining as a matter of comity and respect for another federal court to modify a protective order issued by the other court and instead requiring the party seeking the modification to first go to the issuing court)); *see also Flavorland Indus., Inc. v. United States*, 591 F.2d 524, 525 (9th Cir.1979) (corporation, which was served with federal grand jury subpoena seeking discovery which was part of discovery in prior state court antitrust action between private parties, was directed to petition state judge for modifica-

---

**1.** Rule 26(c)(7) of the Federal Rules of Civil Procedure provides that a court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one

or more of the following: . . . that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way."

tion of protective order so that judge might indicate whether it was his intention to shield the discovery material from the grand jury; court refused to "issue an order which would have the effect of contravening any purpose of [the state judge] in preserving the orderly process of private litigation ... pending before him"); *Dart Indus., Inc. v. Liquid Nitrogen Processing Corp. of California,* 50 F.R.D. 286, 291–92 (D.Del.1970) (in the interest of comity, limiting production and inspection of documents to be produced in this action to those not covered by any protective order of the Illinois district court in a prior lawsuit).

In *Tucker* for example, plaintiffs filed a motion to compel seeking production of documents related to two prior state court lawsuits brought against the defendant in Texas and New York. Defendant objected to the production of the documents, in part because production would violate a confidentiality order issued by the Texas state court in one of the prior cases. The case before the Texas state court had already settled and concluded. The district court reviewed the state court's confidentiality order and noted:

> Viewed as a whole, the Order is typical of those frequently issued in products liability and commercial cases. It is more in the nature of an agreement between the parties as to how discovery that one party seeks, and the other resists because of confidentiality concerns, will be handled without court intervention. Such agreements, presented to the court as having been consented to by the parties, are routinely signed without any hearing on the merits of the assertion of confidentiality by the party from whom discovery is sought or the appropriateness of the restrictions on use of the documents covered by the order. As such, they do not reflect any conclusion by the court regarding the appropriateness of designating particular documents as confidential pursuant to Fed. R.Civ.P. 26(c)(7). Further, as in this case, such agreements frequently are one sided, imposing all the obligations on the party seeking discovery, and affording all the protections to the party that initially resisted it.

*Tucker,* 191 F.R.D. at 498–99. The district court then described the issue before it as follows:

> The issue that presents itself, then, is what weight, if any, should this court give to the order issued by the Texas state court. On its face, the Texas Order continues in effect, even though the [state court] case has settled. In addition, as the plaintiffs and [defendant] agree, certain of the documents plaintiffs' [sic] seek in this litigation, which I have determined to be relevant to this case, fall within its scope. Resolution of this issue depends on principles of federalism, comity, and courtesy, as well as an evaluation of the nature of the Order, and practical matters such as where the court should allocate the burden and expense of seeking modification of the Order.

*Id.* at 499.

The *Tucker* court cited several cases for the proposition that "a protective order issued by a court, either state or federal, which on its face survives the underlying litigation, continues to have full force and effect on the parties subject to it even after final resolution of the underlying case, and the issuing court retains jurisdiction and authority to modify or revoke it." *Id.* The court then noted that while the principles of federalism and judicial comity are "unquestionably important," they "are not absolute." *Id.* Therefore, the proper inquiry for a reviewing court in determining whether to modify or circumvent a discovery order rendered by another court is to determine whether "under the circumstances, such a result is considered justified." *Id.* at 500. The *Tucker* court adopted the following and persuasive "rules of reason" to use in making this determination:

> **First, [the] court should consider the nature of the protective order issued by the first court.** In this case, ... the order was more in the nature of an agreement between counsel that, once completed and signed, was presented to the court for its approval. Thus, the [Texas court's] role was after the fact, as an instrument to implement what the parties already had agreed to. This is quite a different situation than that presented when a discovery

dispute is raised before a court and, after a full hearing, it issued an order reflecting its deliberative process and decision. There is less need for deference and comity when the order involved is really an agreement by counsel approved, almost as a ministerial act, by the court, than an action directed by the court after a full consideration of the merits of a fully briefed dispute.

**Second, the court should consider the identity of the party from whom discovery is sought.** In this regard, it should be noted that discovery is sought in this case not from the party against whom the obligations of the [state court] order apply, ... but instead from the source of those documents, [defendant]. Thus, compelling the production of the documents sought directly from [defendant] ... does not at all undermine the authority of the Order issued by the Texas court. Indeed, in this case ... there is something unsettling about the notion that [defendant] might forever be insulated from producing discovery in this, or other actions, by virtue of having once produced it in a protected fashion in the [Texas] case....

**Third, the court should consider whether the case in which the original protective order was issued is still pending,** and if not, the burden and expense to the plaintiffs if they are required to file a new action in the Texas court simply to seek modification of the Order issued there. In this regard, the [Texas case] has been settled, and there is no longer any action pending before the Texas court. If that court now is asked to modify its original order, particularly by the plaintiffs in this case, who are not parties to the Texas Order, that court will be in the position of having to rule on a matter of significance only to collateral litigation in this court. Asking the Texas court to second guess the impact of its ruling on collateral litigation is an unfair burden to it, and also imposes a substantial hardship on the plaintiffs forced to seek such relief. It is difficult to imagine why the Texas court should be asked to take time from pressing tasks to consider, for the first time, the merits of a contested discovery dispute

which it never considered in the case before it, and the outcome of which will be important only to the litigation in this court. Similarly, to ask the plaintiffs to bear the expense of filing a new action in the Texas state court seeking a modification of the Order it issued in the [Texas] case would impose far greater burden and expense than if this court decides the issue.

**Finally, the court should consider whether it is possible to incorporate terms in its own order which will further the protections originally ordered by the [state court].** This is easily done by imposing on the plaintiffs in this action the same obligations and restrictions that were originally imposed [by the state court]. Accordingly, the production of the documents in this case which fall within the scope of the Order originally issued by the Texas court will be subject to its same restrictions. As to any documents sought by the plaintiffs in connection with the [Texas case] which do not fall within the purview of the Texas Order, their production shall be subject to the confidentiality order already in place in this case.

*Id.* at 500–02 (emphasis added).

In *LeBlanc v. Broyhill,* 123 F.R.D. 527, 530–31 (W.D.N.C.1988), a case cited in the *Tucker* opinion, the district court modified its own protective order to permit defendants to disclose to plaintiffs discovery materials generated in connection with a related state court action in which plaintiffs were not parties, despite alleged conflict with a protective order entered by the state court, where (1) **plaintiffs had filed a motion to intervene in the state proceeding to have the state court's protective order modified, but the case was voluntarily dismissed with prejudice before plaintiffs were able to get their motion ruled upon or heard,** and (2) **the protective order entered in the state action more "closely resemble[d] a simple contract rather than a court order" because it was only submitted to the state court judge for approval after all parties, including the defendants, had consented to it.** *Id.* at 531 (emphasis added). Under these circumstances, the court found that a "prac-

tical solution" was necessary and did "not feel strongly constrained from ordering [the state court's protective order] to be modified to permit [and essentially require] Defendants to disclose to Plaintiffs' attorneys discovery materials generated in connection with, and during the pendency of, the state action." *Id.* The Court reasoned that "[r]ather than forcing Plaintiffs to file a petition with [the state court judge] in the state action or a 'motion in the case,' this Court will simply direct Defendants to disclose to Plaintiffs' attorneys the discovery materials that have already been generated in the [state court] action." *Id.*

The Special Master and Respondents are in agreement that the documents sought in the Subpoena are within the scope of the State Court's protective orders. There are two State Court orders before this Court.[2] The first order is an "Order on Motion for Ex Parte Temporary Injunction," filed by the plaintiffs in the State Court Action. In this order, dated February 27, 2003, the judge granted the temporary injunction after "[h]aving considered the Verified Complaint, its exhibits, and otherwise being fully advised." The court made factual findings in the order, including a finding that certain documents in the possession of the defendants "may qualify as personal property, trade secrets, or otherwise as confidential valuable business or professional information, and some may even be subject to attorney-client or work product privileges." The court found that plaintiffs had satisfied the requirements for issuance of an *ex parte* temporary injunction under applicable state law, and enjoined the defendants as follows: (1) **"not to disclose, produce or otherwise allow *in camera* inspection of the privileged, confidential, proprietary and trade secret documents of Plaintiffs in their possession, custody or control, to any person in any form (including on computer disks or in other electronic formats) under any circumstances, pending the outcome [sic] a hearing in this matter;"** (2) **"not to disclose or produce *the information* described with the privileged, confidential, proprietary and trade secret documents of Plain-**

**tiffs under any circumstances, pending the outcome of a hearing in this matter;"** and (3) **"to maintain, and not destroy, the documents that are the subject matter of this lawsuit pending the outcome of a hearing in this matter."** (emphasis added).

The second order is an "Agreed Order Appointing Special Master," entered on January 6, 2004. In this Order, the judge indicated that he "reviewed the file," was "advised of the parties' respective positions," and was "further advised of the parties' agreement to the relief." The order appoints the Movant as Special Master; requires the parties to submit all documents that are the subject matter of the action, and a privilege log cataloguing all of these documents, to the Movant; and requires the Movant to "take and maintain possession of the subject documents" and **"maintain the confidentiality of the information contained therein, and be bound by the temporary injunction previously entered by this Court, until and unless otherwise directed by order of this Court or written agreement of all the parties."** (emphasis added).

These orders entered in the State Court Action are not "ministerial." The State Court made findings of fact and conclusions of law and awarded injunctive relief. The State Court later ordered that the Special Master in possession of the documents was also bound by the same injunction entered against the defendants. Thus, the deliberative nature of the State Court's orders, and the fact that the State Court Action is still pending, weigh in favor of deference. Importantly, Respondents would **not** have to bear the expense of filing a separate action in the state court. They would simply file a motion to intervene in the State Court Action, which, to the Court's knowledge, they have not done, and they have not shown that such intervention would be impossible or impracticable.

The fact that the documents in question are being sought from the Special Master also indicates that this Court should refrain from circumventing the State Court's di-

2. The State Court's orders are attached as Exhibits A and B to the Special Master's Motion to Quash the Subpoena, and the Subpoena is attached as Exhibit C.

rectives because the nondisclosure obligations imposed by the State Court specifically apply to the Special Master. Finally, there is no order that this Court could reasonably draft that would incorporate the terms of the State Court's Orders and permit full enforcement of the Subpoena because the Court is not aware of the reasoning and purposes that prompted the State Court to protect the documents in the first place. The State Court ordered complete protection, and nondisclosure by defendants in the State Court Action and by the Special Master, of documents containing any of plaintiffs' privileged, confidential, proprietary and trade secret information, which could only be modified by subsequent order of that court or consent by all the parties to that action. It should be the State Court that decides whether there are any documents produced by the parties, and submitted to the Special Master in the State Court Action, that do not contain protected information, or whether, reconsidering the issue, none of this information should be protected at all, and conse-quently whether any production to the parties in the New York Action is appropriate.

In conclusion, none of the factors that led the *Tucker* and *LeBlanc* courts to modify the state courts' protective orders support granting of the same relief through enforcement of the Subpoena in this case. Accordingly, for all of the reasons stated, the Subpoena is quashed.

2. If the Movant seeks attorney's fees and costs in connection with the filing of this action, he may file the appropriate motion pursuant to S.D. Fla. L.R. 7.3.

3. As there are no other matters for this Court to resolve, the Clerk of Court is instructed to **CLOSE** this case.