WASTE MANAGEMENT, INC., *et al.*, Plaintiffs-Appellees, v. INTERNATIONAL SURPLUS LINES INSURANCE COMPANY *et al.*, Defendants-Appellants.

First District (4th Division)   No. 1—90—2979

Opinion filed June 30, 1992.

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers, Robert J. Franco, Scott O. Reed, and Michael A. Clarke, of counsel), for appellants.

Joseph V. Giffin and Frank K. Heap, both of Bell, Boyd & Lloyd, of Chicago, for appellees.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The defendants, International Surplus Lines Insurance Company, International Insurance Company and American Special Risk Insurance Company (insurers), moved for a preliminary injunction to prevent the plaintiffs, Waste Management, Inc., and Chemical Waste Management, Inc. (Waste), from further disseminating a letter which the insurers claim is protected by the attorney-client and work-product privileges. The letter was written by counsel for the insurers and was sent to the insurers and to several unidentified reinsurers and retrocessionaires who share a common interest with the insurers in defending against this litigation. Waste obtained the letter from the public file of the Federal district court in Chicago, where it had been placed by one of the reinsurers in a lawsuit against defendant International Insurance Company. Waste moved to strike the insurers' motion for a preliminary injunction. The trial court granted Waste's motion to strike, finding that a preliminary injunction would not be effective in preserving the status quo because the letter had already been disseminated.

The insurers have appealed, contending that their motion properly pleaded a cause of action for a preliminary injunction based on the attorney-client and work-product privileges and that the trial court

erred as a matter of law in striking the insurers' motion pursuant to section 2—615 of the Code of Civil Procedure. Ill. Rev. Stat. 1989, ch. 110, par. 2—615.

This action arose on cross-complaints for a declaratory judgment to determine the parties' rights and obligations under a number of environmental impairment liability (EIL) insurance policies affecting coverage for underlying actions involving five waste disposal sites located throughout the country. Waste defended and settled several of the underlying actions, then sought indemnity from the insurers. The EIL policies were issued as part of an international insurance program, or pool, involving various insurers, reinsurers, retrocessionaires, underwriting agents, engineering surveyors and claim handling agents. The Societe Commerciale de Reassurance (SCOR) was one of the lead reinsurers. SCOR retained the law firm of Denenberg, Tuffley, Bocan, Jamieson, Black, Hopkins & Ewald, P.C. (the Denenberg firm), to coordinate the legal defense of claims made against EIL policies issued through the pool. The Denenberg firm was also retained by the defendant insurers.

On March 14, 1990, during a hearing on an unrelated discovery matter, counsel for Waste attempted to introduce into evidence a letter from the Denenberg firm to Melvyn L. Berliner, a claims consultant for SCOR with respect to the claims made by Waste in this litigation. Waste did not disclose the manner in which it obtained the letter.

On March 21, 1990, the insurers filed under seal an emergency verified petition for preliminary injunction, permanent injunction and other relief. The petition alleged that the letter was protected by the attorney-client and work-product privileges because it contained "communications constituting legal advice and containing mental impressions with respect to matters in which litigation had occurred and/or was anticipated." The petition alleged that the recipient of the letter, Melvyn Berliner, was within the control group of SCOR and therefore within the class of persons intended to be protected by the attorney-client privilege. On March 22, 1990, the trial court denied the petition on the grounds that the allegations were insufficient to establish that Berliner was within the control group of SCOR.

On March 29, 1990, Waste filed under seal a request for production of documents. Attached as exhibits to the request were several documents which the insurers claimed were protected by the attorney-client privilege and work-product doctrine. The insurers filed a privilege log identifying the nature of the privilege claimed in connection with each document.

On July 2, 1990, the insurers filed a new motion for a preliminary injunction and other relief. The motion asked the court to restrain Waste "from disseminating, receiving, copying or communicating in any fashion or media" the Berliner letter or any of the documents identified in the privilege log. It asked that discovery be permitted to determine the source of Waste's possession of the letter and other documents and to determine whether Waste disseminated them. The motion also asked the court to grant the insurers leave to file supplemental interrogatories. Attached to the motion were a memorandum of law and 37 exhibits. One of the exhibits was the letter in question, which does not contain language stating that its contents were to be treated as confidential. The affidavit of George F. Curran III, one of the authors of the letter, named several recipients of the letter, then stated that it was also distributed to a number of unnamed "reinsurers of [defendant] International and retrocessionaires of SCOR with respect to [the EIL] policies." Curran further averred that the reinsurers who received the letter shared a "community of interest" with the insurers and that the letters and other documents claimed as privileged were "treated in confidence and no copies or other disclosures of the confidential information contained therein, have been provided by the Denenberg firm to any non-client or other entity who does not share a community of interest with the [insurers]."

An affidavit by Melvyn Berliner stated that Berliner was a claims consultant employed by SCOR, that his duties included the supervision of coordinating counsel and that Berliner's advice formed the basis of SCOR's decisions in certain specified areas.

John W. Dondanville, an attorney with the law firm of Baker & McKenzie, filed an affidavit stating that he was counsel for defendant International in a Federal court action brought by International against Certain Underwriters at Lloyd's, London *et al.* (Certain Underwriters). The suit sought the recovery of reinsurance proceeds with respect to payments made by International to one of its insureds under an EIL policy. Dondanville averred that on March 21, 1990, he became aware of the "probable improper source for Waste Management's possession" of the Berliner letter and the other allegedly privileged documents. According to Dondanville, on February 13, 1990, counsel for Certain Underwriters filed the letter and other documents in the Federal district court as a group exhibit to a motion to disqualify Baker & McKenzie from acting as counsel for International. Upon motion by Baker & McKenzie, these documents were sealed by the Federal court on March 22, 1990. Dondanville further averred that "prior to February 13, 1990, the [firm representing Certain Under-

writers] had been advised that the privilege of such documents must be preserved and the *** firm acknowledged that they and their clients had a substantial obligation to preserve these privileges."

Waste filed a motion to strike the insurers' motion for a preliminary injunction. Waste's motion alleged primarily that the insurers either failed to preserve or waived the confidentiality of the documents in question, and that an injunction would be ineffective in maintaining the status quo because the documents had already been disseminated. Hearings were held on July 31, 1990, August 21, 1990, and September 20, 1990.

At the July 31, 1990, hearing, counsel for the insurers stated that he believed Waste obtained the documents from the Federal district court file before it was sealed. The trial court then asked, "What's the purpose of having this hearing? The documents are out. *** How could I enjoin what's already been distributed?" Counsel replied:

"The best thing we can get would be an order giving us that document back, giving us back the other documents obtained from whatever source in fact they were obtained from, getting them back from the other parties or other entities to whom they have distributed them, and entering an order barring any use of that document in this case."

At the August 21, 1990, hearing, counsel for the insurers stated that the letter and other documents "have been produced in three cases. They have been produced in California, they have been produced in a case in Pennsylvania, and they have been produced in a case here—in this case." Counsel further stated that the Federal court file from which the documents were obtained had been sealed. At the September 20, 1990, hearing, the court made the following comment:

"The purpose of a preliminary injunction is to obtain a determination so that a status quo can be maintained until a permanent injunction is obtained.

Now, the Court has reviewed all of the allegations, affidavits, exhibits, and everything, with a view as to whether or not there are sufficient statements there to warrant the hearing on a preliminary injunction.

The particular area which does not seem to be sufficiently addressed in the preliminary injunction is whether or not a preliminary injunction will maintain a status quo.

* * *

*** I just don't think that the preliminary injunction, the hearing, is going to accomplish anything with respect to obtain-

ing the status quo since there has already been exposure of the letter in the Court file through no fault of [Waste]."

The court then invited further argument on the issue of whether a preliminary injunction would be effective in preserving the status quo. Counsel for the insurers argued that to the best of his knowledge Waste had not disseminated any of the allegedly privileged materials and that a preliminary injunction would prevent it from doing so until a permanent injunction could be obtained. The court then granted Waste's motion to strike, finding that "[t]he status quo was the distribution of the documents, and therefore, there is no status quo to maintain here."

On appeal, the insurers contend that the trial court erred as a matter of law in striking the motion for a preliminary injunction on the grounds that it failed to state a cause of action.

■■ After oral argument was held in this cause, we became concerned about the appealability of the order before us and ordered the parties to brief the issue of jurisdiction. Although injunctions may be the subject of an interlocutory appeal (134 Ill. 2d R. 307(a)(1)), discovery orders may not. (*People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 429 N.E.2d 483.) In determining whether an order is appealable as an injunction, a reviewing court must look to the substance of the order rather than to its form. *In re A Minor* (1989), 127 Ill. 2d 247, 260, 537 N.E.2d 292.

In their motion for a preliminary injunction, the insurers requested various relief in addition to an order enjoining Waste from disseminating the Berliner letter. They asked that Waste be ordered to return all copies of the letter and other allegedly privileged materials. The insurers also asked the court to allow discovery to proceed in order to determine the source of the letter and to grant their motion for leave to file supplemental interrogatories. To a large extent, the relief requested by the insurers involved discovery matters. Our concern is with the possibility of having appellate jurisdiction improperly conferred upon this court simply by the characterization of an otherwise nonappealable interlocutory discovery order as an injunction.

■■ In briefing the issue of jurisdiction, the parties agree that *In re A Minor* (1989), 127 Ill. 2d 247, 537 N.E.2d 292, is the controlling case on whether an order is properly appealable as an injunction. There, the supreme court drew a distinction between ministerial or administrative orders, which regulate only the procedural details of the litigation before the court, and true injunctive orders, which affect the relationship of the parties in their everyday activities apart from the litigation. After considering *A Minor* and our decision in *Cum-*

*mings v. Beaton & Associates, Inc.* (1989), 192 Ill. App. 3d 792, 549 N.E.2d 634, we are persuaded that the relief requested by the insurers went beyond ministerial matters involving the procedural aspects of the lawsuit. Although we believe this to be a close question, it appears that the matter is properly appealable as the denial of an injunction.

A preliminary injunction is a provisional remedy grounded in equity. (*Schnepper v. American Information Technologies, Inc.* (1985), 136 Ill. App. 3d 678, 680, 483 N.E.2d 987.) Its purpose is not to determine controverted rights or to decide the merits of the case. (*In re Marriage of Schwartz* (1985), 131 Ill. App. 3d 351, 354, 475 N.E.2d 1077.) Rather, the purpose of a preliminary injunction is to preserve the status quo pending a decision on the merits. (*Schnepper,* 136 Ill. App. 3d 678, 483 N.E.2d 987.) The status quo is defined as the last, actual, peaceable, uncontested status which preceded the controversy. *Spunar v. Clark Oil & Refining Corp.* (1977), 53 Ill. App. 3d 477, 481, 368 N.E.2d 990.

A court exercises broad discretionary powers in determining whether a preliminary injunction should issue. (*American National Bank & Trust Co. v. Chicago Title & Trust Co.* (1985), 134 Ill. App. 3d 772, 776-77, 481 N.E.2d 71.) A reviewing court may consider substantive issues only so far as necessary to determine whether the trial court acted within the parameters of its authority. *American National Bank & Trust Co.,* 134 Ill. App. 3d 772, 481 N.E.2d 71.

In the case at bar, the insurers maintain that the sole question considered by the trial court was whether the allegations of the insurers' motion for a preliminary injunction sufficiently stated a cause of action. They maintain that the issue was simply one of law and that the trial court did not exercise its discretion in striking their motion. We disagree. Our review of the record leads us to conclude that the trial court determined that, even accepting the insurers' allegations as true, a preliminary injunction would not be effective in preserving the status quo—a matter of discretion.

The motion and exhibits filed by the insurers show that the letter from the Denenberg firm to Melvyn Berliner was distributed to several unnamed reinsurers and retrocessionaires. Although affidavits from some of the recipients stated that the letter was treated as confidential, the letter itself did not contain any language directing that it be held in confidence. One of the reinsurers, in an unrelated lawsuit against defendant International, filed a letter in the Federal district court in Chicago, where it remained accessible to the public for a period of five weeks. When the insurers here discovered that Waste had

obtained the letter, the district court file was sealed. However, counsel for the insurers acknowledged that the letter and other allegedly privileged documents had been produced in other lawsuits in different States. Thus, the court was aware that the documents had been accessible to the public and were being used by litigants in other lawsuits. We believe that under the circumstances, the trial court acted within its discretion in determining that a preliminary injunction preventing Waste from disseminating the documents in question would not be effective in maintaining the status quo.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

JOHNSON and McMORROW, JJ., concur.