# Illinois Official Reports

## Appellate Court

---

***Robert R. McCormick Foundation v. Arthur J. Gallagher Risk Management Services, Inc.*,
2018 IL App (2d) 170939**

---

| | |
|---|---|
| Appellate Court Caption | THE ROBERT R. McCORMICK FOUNDATION and THE CANTIGNY FOUNDATION, Plaintiffs-Appellants, v. ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC., Defendant-Appellee. |
| District & No. | Second District<br>Docket Nos. 2-17-0939, 2-17-0940 cons. |
| Filed | July 20, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 13-L-481; the Hon. Kenneth L. Popejoy, Judge, presiding. |
| Judgment | No. 2-17-0939, Affirmed as modified; contempt order vacated; cause remanded.<br>No. 2-17-0940, Affirmed and remanded with directions. |
| Counsel on Appeal | John R. McCambridge, David E. Schoenfeld, and Matthew C. Wolfe, of Shook, Hardy & Bacon L.L.P., of Chicago, for appellants.<br><br>John C. Ellis, of Ellis Legal P.C., and Richard J. Prendergast and Michael T. Layden, of Richard J. Prendergast, Ltd., both of Chicago, for appellee. |

Panel            JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.

Justices Zenoff and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1       These consolidated interlocutory appeals are a sequel to an appeal we decided over two years ago, *Robert R. McCormick Foundation v. Arthur J. Gallagher Risk Management Services, Inc.*, 2016 IL App (2d) 150303 (*Foundations I*). In these appeals, however, we consider the scope of attorney-client privilege and whether the trial court should have granted a renewed request for a stay.

¶ 2       Plaintiffs, the Robert R. McCormick Foundation and the Cantigny Foundation (the Foundations) sued their former insurance broker, Arthur J. Gallagher Risk Management Services, Inc. (Gallagher). The Foundations were formerly the second largest shareholder group in the Tribune Company (Tribune), a large multimedia corporation. The Foundations sold their preferred stock for some $2 billion during a leveraged buyout (LBO) of the company in 2007. Less than one year after the transaction, Tribune filed for bankruptcy protection. The buyout itself, as we noted in *Foundations I*, left many Tribune creditors "holding the proverbial bag." *Id.* ¶ 3.

¶ 3       After the LBO, in 2009, the Foundations hired Gallagher to procure for them directors' and officers' (D&O) liability insurance. Gallagher obtained $25 million in D&O coverage for the Foundations through (what was essentially) a single policy with Chubb Insurance (Chubb). The Foundations allege that in 2010 Gallagher advised that they could obtain the same coverage—"apples-to-apples"—at a reduced premium with (what was essentially) a $25 million policy from Chartis Insurance (Chartis). The Foundations purchased the Chartis policy and let the Chubb policy lapse.

¶ 4       Soon after Tribune exited bankruptcy in 2011 (see *In re Tribune Co.*, 464 B.R. 126 (Bankr. D. Del. 2011)), aggrieved shareholders filed a number of federal suits across the country against more than 5000 defendants; the suits were eventually consolidated in the Southern District of New York. See *In re Tribune Co. Fraudulent Conveyance Litigation*, 831 F. Supp. 2d 1371 (J.P.M.L. 2011). The Foundations were named as defendants in three of the suits (which remain ongoing, as we discuss below). These suits generally allege that the Foundations—through their directors and officers, and acting in concert with other "controlling shareholders"—orchestrated the LBO through actual and constructive fraud. Accordingly, the suits seek to unwind the LBO and to claw back creditors' funds.

¶ 5       Relevant here, when the Foundations tendered the suits (the LBO litigation) to Chartis under their D&O policy, Chartis denied coverage under a policy exclusion for claims "in any way relating to any purchase or sale of securities." The Foundations, asserting that Chubb would have defended and indemnified them under their former policy, sued Gallagher for breach of contract and professional negligence resulting in a loss of coverage. On Gallagher's motion for summary judgment, the trial court determined that an exclusion in the Chubb policy, too, would have barred coverage for the LBO litigation. In *Foundations I*, we held that the Chubb exclusion in question did not necessarily bar coverage, and we reversed the court's

judgment. On remand, Gallagher tendered several affirmative defenses and the parties proceeded with discovery.

¶ 6 During discovery, Gallagher subpoenaed the Foundations and their legal counsel for, among other things, the following:

> "1. Any reports or opinion letters prepared for *** the Foundations *** relating to the Tribune Co. or the LBO.
>
> 2. Any and all communications related to the Foundations' Director[s'] and Officers['] insurance policy or coverage.
>
> 3. Any and all communications with the Foundations related to the Tribune Bankruptcy.
>
> 4. Any and all communications with the Foundations related to the LBO Litigation."

The Foundations indicated that there were documents and electronic communications responsive to Gallagher's request (filing a roughly 40-page privilege log (see Ill. S. Ct. R. 201(n) (eff. July 1, 2014))) but refused to tender them, citing attorney-client privilege. The Foundations then asked the court to quash the subpoenas or, in the alternative, "stay or phase" the case until the completion of the LBO litigation. Gallagher, in turn, sought an order to compel production and opposed the Foundations' stay request.

¶ 7 After a hearing, the trial court denied the Foundations' request for a stay and ordered the Foundations to tender the requested materials. Specifically, the court noted that by suing Gallagher the Foundations had aligned Gallagher's interest with their own in the underlying litigation—that is, that Gallagher "may bear the ultimate burden of payment of the underlying claims and defense costs." Accordingly, under an exception to the attorney-client privilege, which was set forth by our supreme court in *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 190 (1991), the court found that the Foundations must tender the requested materials. The court also stated, however, that it would be willing to consider a protective order limiting Gallagher's use of any disclosure. As to the Foundations' request for a stay, the court noted that it had denied a similar request in April 2014, and it once again declined to issue a stay.

¶ 8 The Foundations appealed the trial court's denial of the stay (No. 2-17-0940). The Foundations also sought to test the trial court's discovery ruling and, in a separate order, were held in "friendly contempt," which they also appeal (No. 2-17-0939). We have jurisdiction over both matters (Ill. S. Ct. R. 304(b)(5) (eff. Mar. 8, 2016); R. 307(a)(1) (eff. Nov. 1, 2017)), which we have consolidated at the parties' request. Now, with some modifications, we affirm the judgment of the trial court.

¶ 9 We turn first to the trial court's contempt finding, under which we review the propriety of the underlying discovery order. See *Norskog v. Pfiel*, 197 Ill. 2d 60, 69 (2001). The attorney-client privilege, of course, protects the confidences communicated between attorney and client. But that privilege, as with so many legal concepts, is not without its exceptions. Indeed, Illinois has "a strong policy of encouraging disclosure," and thus "the privilege, not the duty to disclose, *** is the exception." *Waste Management*, 144 Ill. 2d at 190. Accordingly, our task is to construe the privilege "within its narrowest possible limits." *Id.* We review *de novo* questions concerning the application of and exceptions to the privilege. *Center Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL 113107, ¶ 65.

¶ 10       In *Waste Management*, 144 Ill. 2d 178, our supreme court discussed two exceptions to the attorney-client privilege. The first exception relied on a "cooperation clause" in an insurance contract in that case. *Id.* at 192. Here, the parties agree that there was no cooperation clause in the Foundations' brokerage contract with Gallagher, so the first *Waste Management* exception is irrelevant. See, *e.g.*, *Western States Insurance Co. v. O'Hara*, 357 Ill. App. 3d 509, 516 (2005).

¶ 11       The second *Waste Management* exception, however, does apply. Finding this exception "equally compelling," our supreme court held that, under the common-interest doctrine, the attorney-client privilege did *not* bar discovery of communications or documents, created in defense of two previously settled lawsuits, in a subsequent coverage dispute regarding one of those suits. See *Waste Management*, 144 Ill. 2d at 193. Such materials are, in essence, deemed to have been prepared for the benefit of both parties, as the suit has joined their interests. See *id.* As our supreme court explained, the common-interest doctrine has its roots in the dual-representation doctrine—*i.e.*, where one lawyer represents two joined parties, such as two criminal codefendants—which is a historical exception to the attorney-client privilege. See *id.* at 193-94. However, the court made clear that this exception to the attorney-client privilege "may properly be applied where the attorney, though neither retained by nor in direct communication with the insurer, acts for the mutual benefit of both [parties]"; this is true regardless of whether the parties retained the same lawyer or even had joined interests at the time of the communication. *Id.* at 194. As the court recognized, this situation is, of course, likely to arise in coverage litigation between insurers and insureds, but it is by no means limited to that context. *Id.* at 193. Instead, the exception depends not on the nature of the parties but on the "commonality of interests" between them, or who might be "ultimately liable for payment if the plaintiffs in the underlying action received either a favorable verdict or settlement." *Id.* at 194-95.

¶ 12       The common-interest exception also has its limits. For example, while it might be said that the parties have a common interest in defeating the underlying litigation, and thus are entitled to discovery concerning that litigation, the same cannot be said for coverage matters. On the question of coverage, the parties are diametrically opposed, and so the common-interest rationale does not apply to attorney-client communications concerning coverage. *Id.* at 200-01; see also *id.* at 209 ("[w]hile the parties are now adverse concerning the issue of coverage, no such adversity exists as to the underlying litigation").

¶ 13       Here, the Foundations' core argument is that the *Waste Management* common-interest doctrine should not apply to this broker-malpractice lawsuit. In support of that argument, the Foundations recite our observation that other jurisdictions have criticized *Waste Management*. See generally *Allianz Insurance Co. v. Guidant Corp.*, 373 Ill. App. 3d 652, 664-66 (2007) (collecting cases). Accordingly, the Foundations urge us to apply *Waste Management* "cautiously" and not to "expand" its holding to discovery in broker-malpractice litigation.

¶ 14       While it is true that this court and others have been critical of *Waste Management* (see *id.*), we acknowledge today that our criticism might have been unfair and ultimately unwarranted. While not every jurisdiction adheres to the precise contours of a rule like the one set forth in *Waste Management*, every federal circuit and 46 states recognize at least some form of the common-interest exception to the attorney-client privilege in discovery. See generally Nell Neary, *Last Man Standing: Kansas's Failure to Recognize the Common Interest Doctrine*, 65 U. Kan. L. Rev. 795 (2017) (collecting cases, statutes, and court rules; arguing that Kansas's

failure to recognize the doctrine harms its interests); see also *United States v. McPartlin*, 595 F.2d 1321, 1336 (7th Cir. 1979). Some jurisdictions even recognize a more expansive variation of the doctrine, one that applies not just to litigants in pending suits but also to *potential* litigants. See *Selby v. O'Dea*, 2017 IL App (1st) 151572, ¶ 39 (citing *In re LTV Securities Litigation*, 89 F.R.D. 595 (N.D. Tex. 1981)). And, as noted, the doctrine is not limited to the context of the insured-insurer relationship. In fact, the doctrine arises just as often in the contexts of patent law, mergers and acquisitions, and antitrust litigation (see *id.*; see also Neary, *supra*, at 797-98; 1 Edna Selan Epstein, The Attorney-Client Privilege and the Work Product Doctrine 277 (5th ed. 2007))—areas of the law that have little to do with insurance coverage. It appears that our criticism in *Allianz* might be attributable to a simple problem of nomenclature; as one scholar points out, courts use some two dozen different terms to refer to essentially the same thing: the common-interest doctrine. See George S. Mahaffey Jr., *Taking Aim at the Hydra: Why the "Allied-Party Doctrine" Should Not Apply in Qui Tam Cases When the Government Declines to Intervene*, 23 Rev. Litig. 629 (2004). In short, our criticism of *Waste Management* focused narrowly on that decision and failed to recognize that the concepts underlying that decision have received near-universal acceptance. Accordingly, our criticism of *Waste Management* should not be considered persuasive.

¶ 15 Turning back to the matter at hand, we reject the Foundations' argument that *Waste Management* does not apply to this case. Illinois courts have recognized that, although the dispute in *Waste Management* arose from an insured-insurer relationship, "parties do not have to match the classic profile of an insurer and insured for the concepts in *Waste Management, Inc.* to apply." *BorgWarner, Inc. v. Kuhlman Electric Corp.*, 2014 IL App (1st) 131824, ¶ 33 (citing *Hartz Construction Co. v. Village of Western Springs*, 2012 IL App (1st) 103108, ¶ 30). We also reject the Foundations' argument that they have no mutual interest with Gallagher in the LBO litigation. This case involves a professional negligence suit against an insurance broker for the alleged loss of $25 million in defense and indemnity coverage under a D&O policy. As we said in *Foundations I*, Gallagher "stands in the insurer's shoes for the purpose of this malpractice action" precisely because the Foundations *sued* Gallagher for (the alleged loss of) coverage. See *Foundations I*, 2016 IL App (2d) 150303, ¶ 6 (and cases cited therein); see also *Skaperdas v. Country Casualty Insurance Co.*, 2015 IL 117021, ¶ 35 (discussing duty insurance broker owes to insured). In short, by suing Gallagher, the Foundations have given Gallagher a stake in the LBO litigation. Were Gallagher an insurance company, the Foundations could not deny it discovery on the ground of the attorney-client privilege per *Waste Management*. And, if the Foundations are successful in *this* suit, that is what Gallagher would be in a sense: a *de facto* insurer, liable to the Foundations for both the Foundations' liability to the LBO plaintiffs and the Foundations' defense costs in the LBO litigation. Accordingly, because Gallagher might be "ultimately liable" in the LBO litigation (see *Waste Management*, 144 Ill. 2d at 193), we find that a commonality of interests exists between the Foundations and Gallagher.

¶ 16 We also reject the Foundations' argument that Gallagher's interests are somehow lessened by the fact that the Foundations might have already spent some $25 million in defense of the LBO litigation, which is now entering its eighth year. The mere fact that the Foundations might have already spent money they hope to assign to Gallagher as costs does not extinguish Gallagher's right to examine what it is being asked to pay for. We note that, in *Waste Management*, our supreme court held that there were common interests in an ongoing coverage

dispute over *already settled* lawsuits (see *id.*), and there is no real difference between that scenario and this one.

¶ 17        The parties have argued *Waste Management*'s application as an all-or-nothing question. However, although we find that it does apply, we must apply it fairly. As we noted, the common-interest exception applies only to those matters on which the parties might share liability, such as the LBO litigation, and not to those matters on which the parties are opposed, such as coverage. See *Selby*, 2017 IL App (1st) 151572, ¶ 26. Accordingly, we vacate the portion of the trial court's discovery order compelling the Foundations to tender information on the issue of coverage; in all other respects, the discovery order is affirmed. As we modify the discovery order and find that the Foundations' challenge to the order was undertaken in good faith, we vacate the trial court's contempt finding. See *BorgWarner*, 2014 IL App (1st) 131824, ¶ 35. On remand, the trial court may consider entering protective orders concerning the information shared between the parties, subject to the court's discretion. See generally *Selby*, 2017 IL App (1st) 151572, ¶ 115.

¶ 18        We note that, at oral argument, the Foundations expressed great concern that a federal court—particularly the court overseeing the LBO litigation in New York—might view the common-interest exception differently and that a protective order might not prevent the LBO plaintiffs from obtaining through Gallagher the discovery the Foundations share with Gallagher. Those fears, however, are entirely baseless. First, Illinois and the Second Circuit, where the LBO litigation is being heard, have consistently applied the common-interest exception in similar fashion (compare *Waste Management*, 144 Ill. 2d 178, with *Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015) (citing *United States v. Schwimmer*, 892 F.2d 237 (2d Cir. 1989))), so this would hardly be a question of first impression for a district court in that circuit. But more importantly, even if it were, we are satisfied that anything the Foundations disclose to Gallagher as a result of the trial court's order could not be obtained *through Gallagher*. Were Gallagher subpoenaed by the LBO plaintiffs, principles of comity would compel the federal court to defer to the trial court's previously issued protective order, unless modified. See, *e.g.*, *Donovan v. Lewnowski*, 221 F.R.D. 587, 588 (S.D. Fla. 2004) (citing *Tucker v. Ohtsu Tire & Rubber Co.*, 191 F.R.D. 495, 499-500 (D. Md. 2000)). Moreover, because disclosure here would be made pursuant to state law, the Foundations would not waive any claim of privilege in a federal proceeding. See Fed. R. Evid. 502(c)(2). Thus, while the Foundations' disclosure "cannot be privileged from [the party] who may bear the ultimate burden of payment," the disclosure is apt to retain its "privileged status as to party opponents in the underlying litigation." *Waste Management*, 144 Ill. 2d at 209.

¶ 19        We turn then, finally, to the issue of the stay. A trial court's decision to grant or deny a stay will not be overturned absent an abuse of discretion. See *State Farm Fire & Casualty Co. v. John*, 2017 IL App (2d) 170193, ¶ 18 (citing *Allianz Insurance Co. v. Guidant Corp.*, 355 Ill. App. 3d 721, 730 (2005)). In support of their argument that a stay should be granted, the Foundations invoke the rule set forth in *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187 (1976). Under the *Peppers* doctrine, a court considering a declaratory judgment action—such as coverage litigation—should generally stay that action to refrain from deciding issues of ultimate fact that might bind the parties in the underlying litigation. *State Farm*, 2017 IL App (2d) 170193, ¶ 23. As we recently explained:

        "The classic scenario [under *Peppers*] is where an insured is sued and the allegations of the complaint potentially fall within the scope of the insurance policy, thus triggering

the insurer's duty to defend, but the insurer denies coverage based on an intentional-injury exclusion in the policy. Courts have explained that, in such circumstances, the issue of the insured's intent should be litigated in the underlying tort action, not the declaratory judgment action. [Citations.]" *Id.*

¶ 20　We note that there is some irony to the Foundations' invocation of the *Peppers* doctrine, in that the Foundations wish for Gallagher to be treated as an insurer when it comes to issuing a stay under *Peppers* but *not* when it comes to sharing information pursuant to the common-interest doctrine under *Waste Management*. In any event, with respect to the stay, the Foundations allege that a stay is warranted because there are "overlapping issues" in the LBO litigation and this malpractice litigation and that, thus, a finding on an affirmative-defense issue here could prejudice the Foundations there. We agree with the Foundations that what they knew of the LBO and when they knew it are likely to be critical factors in both suits.

¶ 21　Like the trial court, we are mindful that the LBO litigation, eight years in, is still in the pleading stages and appears unlikely to be resolved any time soon. See *Deutsche Bank Trust Co. Americas v. Robert R. McCormick Foundation*, 584 U.S. ___, ___, 138 S. Ct. 1162, 1163 (2018) (statement of Kennedy, J., and Thomas, J., respecting the petition for *certiorari*); see also *In re Tribune Co. Fraudulent Conveyance Litigation*, No. 11-md-2296 (RJS), 2017 WL 82391 (S.D.N.Y. Jan. 6, 2017). The issuance of a stay requires careful evaluation. For one thing, the current status of the LBO litigation counsels in favor of a stay here, particularly since liability has not yet been determined there. See *State Farm*, 2017 IL App (2d) 170193, ¶¶ 23-30. By the same token, as the trial court noted, Gallagher must not be prejudiced by the loss of evidence in this proceeding, especially as the LBO litigation might not be resolved for years to come.

¶ 22　It is not clear, however, that this litigation must be stayed at this time to avoid prejudicing the Foundations in the LBO litigation. That could change. But for now, discovery could move forward *and* this case could be resolved on grounds that do not implicate the factual matters in the LBO litigation. We believe that the trial court on remand will be in the best position to allow the parties to proceed with discovery and then to stay this litigation if necessary and if the LBO litigation has not yet concluded.

¶ 23　For these reasons, the trial court's discovery order is affirmed as modified and the contempt order is vacated. The court's judgment denying a stay is affirmed without prejudice, pending discovery, dispositive motions, and the status of the LBO litigation.

¶ 24　No. 2-17-0939, Affirmed as modified; contempt order vacated; cause remanded.

¶ 25　No. 2-17-0940, Affirmed and remanded with directions.